[No. C066770. Third Dist. Sept. 27, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
TODD ALLEN SIMMONS, Defendant and Appellant.

780

## COUNSEL

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Carlos A. Martinez and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOCH, J.**—Defendant Todd Allen Simmons was convicted by jury of four counts of committing a lewd or lascivious act on a minor under the age of 14 years (counts 1, 4–6), one count of forcible sexual penetration (count 2), one count of forcible oral copulation (count 3), and one count of exhibiting harmful matter to a minor for purposes of seduction (count 7). Counts 1 through 3 involved crimes committed in 1988 against D.C., his then girl-friend's six-year-old niece. Count 4 involved defendant's victimization of S.D., his then wife's 10- or 11-year-old daughter, between 1997 and 1998. Counts 5 through 7 involved crimes committed against D.R., his then girlfriend's six-year-old son, between 1999 and 2000. With respect to counts 1 through 6, the jury found a multiple-victim special allegation to be true. With respect to counts 5 and 6, the jury found a substantial sexual conduct special allegation to be true. The trial court sentenced defendant to an indeterminate term of 45 years to life plus a consecutive determinate term of 20 years in state prison.

On appeal, defendant contends: (1) counts 4 and 7 were barred by the statute of limitations as a matter of law; (2) the People presented insufficient evidence to prove that the crimes alleged in counts 1 through 3 were committed before the statute of limitations expired; (3) the trial court prejudicially erred and violated his constitutional rights by failing to instruct the jury, sua sponte, to determine whether the crimes alleged in counts 1 through 3 were committed before the statute of limitations expired; (4) defendant's trial counsel rendered ineffective assistance by failing to raise the statute of limitations issue with respect to counts 1 through 3; (5) the trial court's imposition of full-term consecutive sentences on counts 1 and 7 was not authorized by statute; (6) the trial court was not authorized to impose a sentence of 15 years to life on both count 5 and count 6; and (7) the trial court's imposition of consecutive sentences on counts 4 through 6 must be vacated because the trial court erroneously believed consecutive terms were required by statute.

The Attorney General concedes that the trial court was not authorized to impose full-term consecutive sentences on counts 1 and 7. The Attorney General also concedes that the trial court was not authorized to impose a life sentence on both count 5 and count 6. We accept these concessions because they are correct. With respect to defendant's remaining contentions, we conclude that prosecuting defendant for committing a lewd or lascivious act against S.D., as alleged in count 4, was not barred by the statute of limitations. However, prosecuting defendant for exhibiting harmful matter to D.R., as alleged in count 7, was barred by the statute of limitations. Defendant's claims with respect to counts 1 through 3 have been forfeited by

his failure to raise these issues in the trial court. And defendant has not carried his burden of persuading us that he was prejudiced by his trial counsel's failure to preserve these issues. Finally, the record does not demonstrate the trial court erroneously believed it was required to impose consecutive terms on counts 4 through 6.

Thus, we must reverse defendant's conviction in count 7. His remaining convictions are affirmed. In light of the sentencing errors noted above, we vacate defendant's sentence in its entirety and remand the matter to the trial court with directions to impose sentence in accordance with the views expressed in this opinion.

## FACTS

### *Sexual Abuse of D.C. (Counts 1 through 3)*

In January 1988, D.C. was six years old and periodically stayed the night at her grandmother's house in Palo Cedro, a small town east of Redding. The house had three bedrooms, one occupied by D.C.'s grandmother, another occupied by her aunt, Shirley, and a guest bedroom. D.C. stayed in the guest bedroom, as did several cousins who were also staying at the house. Defendant, 20 years old at the time, worked for D.C.'s father and was dating Shirley. He routinely stayed the night at the house.

One night, defendant came into the guest bedroom while D.C. was sleeping, pulled back the covers, and crawled into bed with her. D.C. was wearing a shirt and underwear. At first, she thought defendant "just needed a place to sleep, like for whatever reason he couldn't sleep in the living room." Defendant then started rubbing her legs with his hands, pushed up her shirt, and pulled down her underwear. Defendant told D.C. "how soft [her] skin was." He then positioned his upper body on top of D.C., started rubbing the inside of her legs with his hands, and penetrated her vagina with his fingers. Defendant then "put his mouth on [D.C.'s] vagina[l area]" and told her that "he wanted [her] to do the same for him." D.C., who had been quiet up to this point, "told him no and tried to get out from under him." Defendant told her to "be quiet" and not to "tell anybody about what happened because he would hurt [her] parents." Defendant then got out of bed, retrieved a towel from the bathroom, and cleaned up something on the bed. D.C. put her underwear on and went back to sleep.

That same month, D.C.'s mother, Terri C., became ill and was hospitalized for seven days.[1] The day Terri C. was released from the hospital, D.C. told her mother that defendant pulled her underwear down and touched her while she was staying at her grandmother's house. When Terri C. told her husband about D.C.'s accusation, he did not believe that defendant, one of his "best friends," had molested his daughter and told his wife not to talk to D.C. about the incident. About a year later, Terri C. took D.C. to child protective services for an evaluation and told an acquaintance who worked for the sheriff's department about the incident. However, no official report was made to law enforcement until 2009, after defendant was arrested for the crimes committed against D.R., described below. When Terri C. saw the arrest on the local news, she called the Redding Police Department and reported that defendant had also molested her daughter.

Based on these facts, defendant was convicted of one count of committing a lewd or lascivious act on a minor under the age of 14 years, one count of forcible genital penetration, and one count of forcible oral copulation.

*Sexual Abuse of S.D. (Count 4)*

Defendant was married to W.D. for four months between 1997 and 1998. He lived with W.D. and her two daughters, S.D. and her older sister, in Shasta Lake City, a small town north of Redding. S.D. turned 11 years old during this time period.

One afternoon during the marriage, while W.D. was at work, defendant was cooking dinner in the kitchen. S.D. "was just running in there and bothering him and just playing around." Defendant unexpectedly pulled her pants and underwear down to her ankles. S.D., "thinking that [they] were playing," stepped out of her pants and underwear, ran to the bathroom, locked the door, and got into the shower. Defendant followed, unlocked the door, and came into the bathroom. S.D. then got out of the shower, ran back to the kitchen, and jumped up on the counter. Defendant again followed. S.D. sat on the counter with her legs hanging over the side. Defendant grabbed her knees, pushed them apart, and looked at her vagina. Smiling in a "[p]erverse" way, defendant commented that she was "starting to grow hair."

At this point, S.D. could hear the sound of her mother pulling into the driveway. S.D. went into the living room, found a pair of defendant's boxers, and put them on. When W.D. asked S.D. why she was wearing defendant's

---

[1] In order to safeguard the privacy of the victims in this case, we do not include the last names of their parents. Instead, each parent will be referred to by his or her first name and the first letter of the last name.

boxers, S.D. answered that she put them on after defendant took her pants off. At this point, defendant yelled S.D.'s name in a stern voice, "pretty much telling [her] to be quiet." S.D. stopped talking. A few minutes later, W.D. called S.D. into her bedroom, where S.D. revealed what happened.

Based on these facts, defendant was convicted of one count of committing a lewd or lascivious act on a minor under the age of 14 years.

### Sexual Abuse of D.R. (Counts 5 through 7)

Defendant dated Debbie B. between 1999 and 2000. He lived with Debbie B. and her two sons, D.R. and C.R., in Redding for two or three months during this time period. D.R. was six years old. C.R. was four years old.

One day, while Debbie B. was out of the house, defendant and D.R. were in the living room watching television. Defendant asked D.R. to go into his mother's bedroom. D.R. followed defendant into the bedroom and sat on the bed. Defendant put on a pornographic movie depicting people having sex on a beach and then joined D.R. on the bed. Defendant told D.R. to take his clothes off, helped him do so, and started touching D.R.'s legs and penis, making the boy feel "[s]cared" and "[w]eird." Defendant then started touching his own penis, moved D.R.'s hand over to his penis, and said: "Here, do this." D.R. touched defendant's penis for a few minutes while defendant continued to touch D.R. Defendant then put D.R.'s penis in his mouth, asked D.R. if he "liked it," and told D.R. to continue touching him. A short time later, defendant took his mouth off of D.R.'s penis, masturbated himself to ejaculation, and turned off the movie. After telling D.R. not to tell anybody about what happened, defendant allowed D.R. to get dressed and return to the living room to watch television.

D.R. did not tell his mother about this incident for about two years. When he did so, he revealed only that defendant showed him a pornographic movie. He did not tell her more because he "was still scared" and "didn't want to tell anybody about it." Debbie B. took D.R. to the police station to report the incident. At the station, D.R. repeated what he had told his mother. At this point in time, defendant was living in Arkansas. He moved there shortly after he stopped dating Debbie B. and lived there for six years.

A few years after D.R. first told his mother about the incident, he told her more of what defendant had done to him. As Debbie B. explained, D.R. had taken a sexual education class at school and told her that he had a better understanding of what happened. This prompted Debbie B. to take D.R. back

to the police station. D.R. told police that, in addition to playing a pornographic movie, defendant also touched D.R. and had D.R. touch him. D.R. did not tell police about the oral copulation. Around this time period, D.R. began to receive counseling and felt better able to discuss everything that happened.

Ultimately, in 2009, D.R. told police the full extent of what defendant had done to him. While at the police station, D.R. made a pretext call to defendant in an effort to elicit admissions concerning the abuse. Defendant said that "he didn't remember doing it," but never "said the words, I did not do this." Debbie B. also made a pretext call to defendant. Defendant again claimed not to remember abusing D.R., but "[n]ever once did he deny it."

Based on these facts, defendant was convicted of two counts of committing a lewd or lascivious act on a minor under the age of 14 years and one count of exhibiting harmful matter to a minor for purposes of seduction.

## DISCUSSION

### I

### *Statute of Limitations*

Defendant contends that counts 4 and 7 were barred by the statute of limitations as a matter of law. While these contentions were not raised in the trial court, defendant is essentially asserting that the information, on its face, shows the prosecution of these counts was untimely, which may be raised for the first time on appeal. (*See People v. Williams* (1999) 21 Cal.4th 335, 341 [87 Cal.Rptr.2d 412, 981 P.2d 42] (*Williams*).) We conclude that count 4 was brought within the applicable limitations period. Not so with respect to count 7.

### A.

### *Count 4*

Count 4 alleged that defendant committed a lewd or lascivious act against S.D., a child under the age of 14 years, in violation of Penal Code section 288, subdivision (a),[2] between April 1, 1997, and December 31, 1997. The jury convicted defendant of this crime, which is punishable by three, six, or eight years in prison. (§ 288, subd. (a).) However, the jury also found true

---

[2] Undesignated statutory references are to the Penal Code.

a multiple-victim special allegation. Thus, pursuant to section 667.61, subdivision (b), the trial court imposed a term of 15 years to life.

Defendant argues that the six-year statute of limitations found in former section 800 applies to this crime. At the time defendant committed the crime, this section provided: "Except as provided in Section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more shall be commenced within six years after commission of the offense." (Former § 800, as enacted by Stats. 1984, ch. 1270, § 2, p. 4335.) Section 799, which has not been amended since defendant committed the crime, provides in relevant part: "Prosecution for an offense punishable by death or by imprisonment in the state prison for life or for life without the possibility of parole, or for the embezzlement of public money, may be commenced at any time."

Defendant acknowledges that the Court of Appeal for the Sixth Appellate District has recently held that where a defendant is sentenced to a life term for a violation of section 288 under the "alternate penalty scheme" of section 667.61, as was defendant in this case, "the unlimited timeframe for prosecution set out in section 799 for an offense 'punishable by death or by imprisonment in the state prison for life . . .' applies . . . ." (*People v. Perez* (2010) 182 Cal.App.4th 231, 239–240 [105 Cal.Rptr.3d 749].) Defendant argues that *Perez* was wrongly decided. The Attorney General disagrees and argues in the alternative that prosecution for count 4 was timely pursuant to section 801.1, subdivision (a). Because we agree with this latter argument, we need not address whether *Perez* was correctly decided.

 Section 801.1, subdivision (a), provides that prosecution for a number of sex offenses, including section 288, "may be commenced any time prior to the victim's 28th birthday" if the crime "is alleged to have been committed when the victim was under the age of 18 years." This subdivision was added to section 801.1, effective January 1, 2006. (Stats. 2005, ch. 479, § 2, pp. 3790–3791.) Prosecution of defendant for committing a lewd or lascivious act against S.D. was commenced prior to her 28th birthday and it was alleged that the crime was committed when she was under the age of 18 years. Thus, prosecution for this crime was timely as long as it was not time-barred on January 1, 2006, when section 801.1, subdivision (a), took effect.  (See § 803.6, subd. (b) [any change in the statute of limitations applies to any crime if prosecution for the crime was not barred on the effective date of the change by the statute of limitations in effect prior to the effective date of the change];[3] *Stogner v. California* (2003) 539 U.S. 607, 617–621 [156 L.Ed.2d 544, 555–558, 123 S.Ct. 2446] [ex post facto clause

---

[3] While section 803.6 was enacted in 2004, it was merely "declaratory of existing law." (§ 803.6, subd. (c).)

prohibits resurrection of a time-barred prosecution, distinguishing cases in which the limitations period was extended before the prior period expired].)

■ Prosecution of defendant for count 4 was not time-barred on January 1, 2006. This crime was alleged to have been committed between April 1, 1997, and December 31, 1997. As already mentioned, at that time, there was a six-year statute of limitations. (Former § 800, as enacted by Stats. 1984, ch. 1270, § 2, p. 4335.) However, on January 1, 2001, two years before the six-year limitations period expired, a 10-year statute of limitations was enacted as to felonies enumerated in section 290, including violations of section 288. (Former § 803, subd. (h), as enacted by Stats. 2000, ch. 235, § 1, pp. 2338, 2342; *In re White* (2008) 163 Cal.App.4th 1576, 1580–1581 [79 Cal.Rptr.3d 195] [the 10-year limitations period now found in § 801.1, subd. (b), was a continuation of the 10-year limitations period originally codified in former § 803, subd. (h)].) And on January 1, 2006, over a year before this 10-year limitations period expired, section 801.1, subdivision (a), took effect, extending the limitations period to S.D.'s 28th birthday, which is not until March 10, 2015.

Thus, regardless of whether defendant could be prosecuted for committing a lewd or lascivious act on S.D. "at any time" under section 799, the prosecution was timely under section 801.1, subdivision (a).

B.

*Count 7*

Count 7 alleged that defendant exhibited harmful matter to D.R., a minor, for purposes of seduction, in violation of former section 288.2, subdivision (a), between February 9, 1999, and February 9, 2000. The jury convicted defendant of this crime. At the time defendant was sentenced, former section 288.2, subdivision (a), was punishable by 16 months, two, or three years in prison.[4] (Former § 288.2, subd. (a), as amended by Stats. 1997, ch. 590, § 1,

---

[4] The current version of section 288.2, subdivision (a), provides for punishment "by imprisonment pursuant to subdivision (h) of Section 1170 or in a county jail." Section 1170, subdivision (h), provides in relevant part: "(1) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years. [¶] . . . [¶] (3) Notwithstanding paragraphs (1) and (2), where the defendant (A) has a prior or current felony conviction for a serious felony described in subdivision (c) of Section 1192.7 or a prior or current conviction for a violent felony described in subdivision (c) of Section 667.5, (B) has a prior felony conviction in another jurisdiction for an offense that has all the elements of a serious felony described in subdivision (c) of Section 1192.7 or a violent felony described in subdivision (c) of Section 667.5, (C) is required to register as a sex offender pursuant to Chapter 5.5 (commencing with Section 290) of Title 9 of Part 1, or (D) is

pp. 3618–3619; former § 18, as amended by Stats. 1976, ch. 1139, § 98, p. 5089.) Thus, the maximum punishment for a violation of former section 288.2, subdivision (a), was three years in prison.

Defendant argues that the three-year statute of limitations found in former section 801 applies to this crime. At the time defendant committed the crime, this section provided: "Except as provided in Sections 799 and 800, prosecution for an offense punishable by imprisonment in the state prison shall be commenced within three years after commission of the offense." (Former § 801, added by Stats. 1984, ch. 1270, § 2, p. 4335.) The Attorney General argues that the 10-year statute of limitations found in section 801.1, subdivision (b), applies, and that the prosecution was not time-barred because this limitations period was tolled for three years under section 803, subdivision (d). We conclude that the prosecution was time-barred.

Section 801.1, subdivision (b), provides: "Notwithstanding any other limitation of time described in this chapter, if subdivision (a) does not apply, prosecution for a felony offense described in subdivision (c) of Section 290 shall be commenced within 10 years after commission of the offense." Section 288.2 is an offense described in section 290, subdivision (c). The 10-year limitations period provided in section 801.1, subdivision (b), became effective January 1, 2005. (Stats. 2004, ch. 368, § 1, p. 3470.) Thus, this extended limitations period applies to defendant's violation of section 288.2, subdivision (a), only if the prior three-year limitations period did not expire before January 1, 2005. (See § 803.6, subd. (b); *Stogner v. California, supra,* 539 U.S. at pp. 617–621 [156 L.Ed.2d at pp. 555–558].) As mentioned, defendant was alleged to have violated section 288.2, subdivision (a), between February 9, 1999, and February 9, 2000. The People presented substantial evidence that the crime occurred sometime during this time period, but not precisely when. Because the crime could have been committed as early as February 9, 1999, the three-year statute of limitations expired on February 9, 2002, well before the effective date of section 801.1, subdivision (b).

Nevertheless, the Attorney General argues that the three-year limitations period found in former section 801 was extended on January 1, 2001, the

---

convicted of a crime and as part of the sentence an enhancement pursuant to Section 186.11 is imposed, an executed sentence for a felony punishable pursuant to this subdivision shall be served in state prison." Because section 288.2 is a registerable sex offense, requiring punishment in state prison under section 1170, subdivision (h)(3), it seems that a violation of section 288.2, subdivision (a), is still punishable by 16 months, or two or three years in prison. We need not resolve the question in this case, however, because the sentencing changes made by the Criminal Justice Realignment Act of 2011 "shall be applied prospectively to any person sentenced on or after October 1, 2011" (§ 1170, subd. (h)(6)), and defendant was sentenced on October 25, 2010.

effective date of former section 803, subdivision (h), the predecessor of section 801.1, subdivision (b). Former section 803, subdivision (h), provided in pertinent part: "Notwithstanding the limitation of time *described in Section 800*, the limitations period for commencing prosecution for a felony offense described in subparagraph (A) 15 of paragraph (2) of subdivision (a) of Section 290, where the limitations period *set forth in Section 800* has not expired as of January 1, 2001, or the offense is committed on or after January 1, 2001, shall be 10 years from the commission of the offense . . . ." (Former § 803, subd. (h)(1), italics added, as amended by Stats. 2000, ch. 235, § 1, pp. 2338, 2342.) Acknowledging that former section 803, subdivision (h), "omitted any reference to section 801," the Attorney General asks us to review the legislative history and hold that this provision was intended to apply notwithstanding the limitation of time described in section 801, arguing that "it is reasonable to presume that the Legislature intended the 10-year statute of limitations to apply to any felony described in section 290, subdivision (c) (formerly section 290, subdivision (a)(2)(A)), regardless of whether there was a six-year (§ 800) or three-year (§ 801) statute of limitations for the offense." We are not persuaded.

■ Issues of statutory interpretation are questions of law subject to de novo review. (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1492 [35 Cal.Rptr.3d 596].) "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. [Citations.]" (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563]; see *San Leandro Teachers Assn. v. Governing Bd. of San Leandro Unified School Dist.* (2009) 46 Cal.4th 822, 831 [95 Cal.Rptr.3d 164, 209 P.3d 73].)

■ Here, there is but one reasonable interpretation. The phrase "[n]otwithstanding the limitation of time described in [s]ection 800" in former section 803, subdivision (h), means precisely what it says. Section 803, subdivision (h) extends the statute of limitations for certain sex offenses notwithstanding the fact that the offense would otherwise be subject to the six-year limitations period of section 800. We cannot rewrite this phrase to mean "notwithstanding any other limitation of time described in this chapter." The Legislature knew how to use such language. Indeed, it used this very

language in former section 803, subdivisions (f) and (g), immediately preceding the subdivision in question. (Former § 803, subds. (f)(1), (g)(1), as amended by Stats. 2000, ch. 235, § 1, pp. 2338–2340.)

Nor can we interpret the phrase to mean "notwithstanding the limitation of time described in section 800 or section 801." Section 800 provides for a six-year limitations period for crimes punishable by imprisonment for eight years or more. Section 801 provides for a three-year limitations period for crimes punishable by imprisonment for less than eight years. Thus, the seriousness of the crime dictates the length of the applicable limitations period. It is not unreasonable to believe that the Legislature, in enacting former section 803, subdivision (h), intended to extend the limitations period for sex offenses that were punishable by imprisonment for eight years or more, while keeping intact the three-year limitations period of section 801 for less serious sex offenses that were punishable by imprisonment for less than eight years. Because a literal interpretation of the phrase "notwithstanding the limitation of time described in section 800" does not yield an absurd result, we must follow that interpretation regardless of whether we agree with the Legislature's choice of words.

Accordingly, former section 803, subdivision (h), did not extend the three-year limitations period on January 1, 2001. Because this limitations period expired before the effective date of section 801.1, subdivision (b), prosecution of defendant for exhibiting harmful matter to D.R., as alleged in count 7, was untimely.

II

*Sufficiency of the Evidence*

Defendant also asserts, for the first time on appeal, that the People presented insufficient evidence to establish that the crimes alleged in counts 1 through 3 were committed on or after January 1, 1988, the earliest they could have been committed in order to fall within the limitations period. However, as we explain below, because the information alleges facts that avoid the statute of limitations bar, defendant's failure to raise this factual issue in the trial court has resulted in forfeiture of the issue on appeal.

Count 1 alleged that defendant committed a lewd or lascivious act against D.C., a child under the age of 14 years, in violation of section 288, subdivision (a). Count 2 alleged that defendant forcibly penetrated D.C.'s vagina with a foreign object in violation of section 289, subdivision (a). Count 3 alleged that defendant forcibly engaged in an act of oral copulation with D.C. in violation of section 288a, subdivision (c). Each count was

alleged to have been committed between January 1, 1988, and January 31, 1988. At the time defendant committed these crimes, each was punishable by three, six, or eight years in prison. (Former § 288, subd. (a), as amended by Stats. 1987, ch. 1068, § 3, p. 3609; former § 289, subd. (a), as amended by Stats. 1986, ch. 1299, § 6, pp. 4597–4598; former § 288a, subd. (c), as amended by Stats. 1986, ch. 1299, § 5, pp. 4595–4596.) Thus, the applicable statute of limitations for each count was six years. (Former § 800, as enacted by Stats. 1984, ch. 1270, § 2, p. 4335.)

However, as defendant acknowledges, effective January 1, 1994, the day this six-year limitations period expired, former section 803 was amended to include subdivision (g). This subdivision provided: "Notwithstanding any other limitation of time described in this section, a criminal complaint may be filed within one year of the date of a report to a law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5. This subdivision shall apply only if both of the following occur: [¶] (1) The limitation period specified in Section 800 or 801 has expired. [¶] (2) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation which is not mutual, and there is independent evidence that clearly and convincingly corroborates the victim's allegation. No evidence may be used to corroborate the victim's allegation which would otherwise be inadmissible during trial. Independent evidence shall not include the opinions of mental health professionals." (Former § 803, subd. (g), as amended by Stats. 1993, ch. 390, § 1, p. 2226.) This provision, with changes not material to our analysis, is currently found in section 803, subdivision (f).

The information alleged that counts 1 through 3 were committed between January 1, 1988, and January 31, 1988, and that the requirements of section 803, subdivision (f), were satisfied, rendering prosecution for these counts timely. The jury was properly instructed on this provision and, by convicting defendant of counts 1 through 3, necessarily found both that the subdivision applied and that the prosecution was brought within one year of D.C.'s report to law enforcement. Defendant does not attack these implied findings. Instead, he contends there was insufficient evidence that the crimes occurred on or after January 1, 1988. This would mean that the statute of limitations expired before section 803, subdivision (f)'s predecessor (former § 803, subd. (g)) became effective, making defendant's prosecution for these crimes untimely. (See § 803.6, subd. (b); *Stogner v. California, supra,* 539 U.S. at pp. 617–621 [156 L.Ed.2d at pp. 555–558].) Defendant has forfeited this contention.

In *Williams, supra,* 21 Cal.4th 335, our Supreme Court held that "if the charging document indicates on its face that the charge is untimely, absent

an express waiver, a defendant convicted of that charge may raise the statute of limitations at any time." (*Id.* at p. 338.) In so holding, the court noted that it had previously overruled *People v. McGee* (1934) 1 Cal.2d 611 [36 P.2d 378] (*McGee*) " 'to the extent it suggests a court lacks fundamental subject matter jurisdiction over a time-barred criminal action.' " (*Williams, supra,* 21 Cal.4th at pp. 337–338, 340, quoting *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 374 [58 Cal.Rptr.2d 458, 926 P.2d 438] (*Cowan*).) Thus, where a defendant facing timely capital charges wishes to plead guilty to a time-barred lesser offense under a plea bargain, he or she may waive the statute of limitations on the lesser offense. (*Cowan, supra,* 14 Cal.4th at p. 374.) In *Williams*, the court was asked to hold that the statute of limitations is an affirmative defense, which is forfeited if not raised before or during trial. (*Williams, supra,* 21 Cal.4th at p. 340.) The court declined, explaining: "We believe our long-standing nonforfeiture rule is preferable when the defendant is convicted of the charged offense *and the charging document indicates the action is time-barred.*" (*Id.* at p. 342, italics added.)

In *People v. Thomas* (2007) 146 Cal.App.4th 1278 [53 Cal.Rptr.3d 473] (*Thomas*), the Court of Appeal held that a defendant may forfeit a claim that the statute of limitations has expired when the information does not indicate the action is time-barred. (*Id.* at pp. 1287–1289.) The court read *Williams, supra,* 21 Cal.4th 335 "as containing a clear and intentional limitation on the scope of the nonforfeiture rule. *Williams* repeatedly emphasized that the action was untimely on the face of the information. [Citation.] '[T]he problem here is limited to those cases in which the prosecution files a charging document that, on its face, indicates the offense is time-barred. "[W]here the pleading of the state *shows that the period of the statute of limitations has run,* and nothing is alleged to take the case out of the statute, for example, that the defendant has been absent from the state, the power to proceed in the case is gone." [Citation.] *McGee* does not apply to an information that, as it should, either shows that the offense was committed within the time period or contains tolling allegations. Although, under our cases, defendants may not forfeit the statute of limitations if it has expired as a matter of law, they may certainly lose the ability to litigate factual issues such as questions of tolling.' " (*Thomas, supra,* 146 Cal.App.4th at p. 1288, quoting *Williams, supra,* 21 Cal.4th at p. 344.)

We also conclude that a defendant may forfeit factual issues relating to the statute of limitations when, as here, the information alleges facts indicating that the prosecution was timely. Indeed, this is precisely what we held in *People v. Padfield* (1982) 136 Cal.App.3d 218 [185 Cal.Rptr. 903], a case quoted with approval in *Williams, supra,* 21 Cal.4th at page 345. There, the information alleged discovery of the crime within the limitations period. The defendant pled no contest and then asserted the statute of limitations on appeal. We held the defendant had forfeited the issue, explaining that the

nonforfeiture rule was limited to cases where the accusatory pleading showed on its face that the action was untimely. "[W]hen the pleading is facially sufficient, the issue of the statute of limitations is solely an evidentiary one. The sufficiency of the evidence introduced on this issue does not raise a question of jurisdiction in the fundamental sense." (*People v. Padfield, supra,* 136 Cal.App.3d at p. 226; see *People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1439 [89 Cal.Rptr.3d 402] [noting that if "the People plead facts to avoid the bar of the statute of limitations, and the defendant fails to put the People to their proof in the trial court, then the defendant forfeits the statute of limitations issue and cannot raise it for the first time on appeal"].)

Here, as mentioned, the information alleged that counts 1 through 3 were committed between January 1, 1988, and January 31, 1988, and that the requirements of section 803, subdivision (f), were satisfied, rendering prosecution for these counts timely. At trial, while defendant disputed certain of the section 803, subdivision (f), requirements, he did not dispute that the crimes were committed, if at all, on or after January 1, 1988. He has therefore forfeited the ability to do so on appeal.

■ Nor are we persuaded by defendant's reliance on *People v. Castillo* (2008) 168 Cal.App.4th 364 at page 369 [85 Cal.Rptr.3d 448], and *People v. Linder* (2006) 139 Cal.App.4th 75 at page 84 [42 Cal.Rptr.3d 496], in which it was stated that the prosecution bears the burden of proving by a preponderance of evidence that the action was commenced within the applicable limitations period. While this statement of the rule is generally true, it does not address the forfeiture issue. A more accurate description of the rule is that "the statute of limitations is a substantive matter which the prosecution must prove by a preponderance of evidence *if the defense puts the prosecution to its proof.*" (*People v. Le* (2000) 82 Cal.App.4th 1352, 1360 [98 Cal.Rptr.2d 874], italics added, citing *Cowan, supra,* 14 Cal.4th at p. 374; see *Thomas, supra,* 146 Cal.App.4th at p. 1288, fn. 5.) Because defendant did not do so at trial, he may not do so on appeal.

### III

### *Instructional Error*

Defendant further asserts that the jury should have been instructed that the crimes alleged in counts 1 through 3 had to have been committed on or after January 1, 1988, in order for the prosecution to be timely. The trial court's failure to do so, argues defendant, resulted in a violation of his constitutional rights. This assertion has also been forfeited.

■ "As a general rule, the trial court need only instruct on the statute of limitations when it is placed at issue by the defense as a factual matter in the

trial. [Citations.] To hold otherwise would render moot the discussion in *Williams* as to whether the defendant may raise a statute of limitations claim for the first time on appeal. If the trial court has a sua sponte duty to instruct on the statute of limitations, even if factually not placed at issue by the defendant at trial, there would never have been an issue as to forfeiture of the right to raise the statute of limitations for the first time on appeal; the claim always would be preserved under the rubric of instructional error for failure to give a required instruction sua sponte." (*People v. Smith* (2002) 98 Cal.App.4th 1182, 1192–1193 [120 Cal.Rptr.2d 185].)

Here, as mentioned, defendant placed at issue the question of whether section 803, subdivision (f)'s, requirements had been satisfied. The jury was properly instructed on this provision. However, defendant did not place at issue the question he now raises, i.e., whether the crimes were committed on or after January 1, 1988, as alleged in the information, and he did not ask that the jury be instructed to determine whether the crimes were committed on or after this date. The trial court had no sua sponte duty to instruct the jury on this uncontroverted issue. (*People v. Smith, supra*, 98 Cal.App.4th at pp. 1192–1193; *Thomas, supra*, 146 Cal.App.4th at p. 1288, fn. 5 [no duty to instruct on the statute of limitations where the defendant has not put the prosecution to its proof].)

IV

*Ineffective Assistance of Counsel*

Anticipating that we would find forfeiture of his statute of limitations claims, defendant argues that his trial counsel rendered constitutionally deficient assistance by failing to recognize that the crimes involving D.C. "may have occurred *before* 1988 and that, therefore, there was a factual issue for the jury to decide as to whether the six-year statute of limitations expired before subdivision (g) was added to section 803 on January 1, 1994." Even assuming counsel's performance was deficient, we find no reasonable probability of a more favorable outcome had the jury been asked to determine whether the crimes were committed on or after January 1, 1988.

A criminal defendant has the right to the assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839].) This right "entitles the defendant not to some bare assistance but rather to *effective* assistance. [Citations.] Specifically, it entitles him to 'the reasonably competent assistance of an attorney acting as his diligent conscientious advocate.' [Citations.]" (*Ibid.*)

The burden of proving a claim of ineffective assistance of counsel is squarely upon the defendant. (*People v. Camden* (1976) 16 Cal.3d 808, 816 [129 Cal.Rptr. 438, 548 P.2d 1110].) " 'In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his [or her] "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*In re Harris* (1993) 5 Cal.4th 813, 832–833 [21 Cal.Rptr.2d 373, 855 P.2d 391]; see *People v. Ledesma, supra,* 43 Cal.3d at pp. 216–217; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693, 104 S.Ct. 2052].)

Defendant has failed to carry his burden of demonstrating prejudice. Here, the evidence before the jury supports the conclusion that the crimes committed against D.C. occurred on or after January 1, 1988. Specifically, D.C. testified that the crimes took place in the guest room of her grandmother's house while she stayed the night and while her cousins were also staying in the room. Terri C. testified that these cousins stayed at the grandmother's house a lot in January 1988 because one of the cousins was diagnosed with leukemia that month and the grandmother helped care for him. Terri C. was also hospitalized for seven days in January 1988. The day she was released from the hospital, D.C. told her that defendant had touched her while she was staying at her grandmother's house. Moreover, there is no evidence that D.C. and her cousins stayed the night at their grandmother's house at any time other than January 1988. Based on the evidence, we conclude there is no reasonable probability the jury would have found that the crimes involving D.C. occurred before January 1, 1988.

## V

### *Full-term Consecutive Sentences on Counts 1 and 7*

Defendant is correct, as the Attorney General concedes, that the trial court was not authorized to impose full-term consecutive sentences on counts 1 and 7 pursuant to former section 667.6.

The probation report filed on October 12, 2010, recommended an indeterminate term of 15 years to life to be imposed on each of counts 1 through 6, pursuant to section 667.61, subdivision (b). Agreeing that ex post facto principles precluded application of this alternate sentencing scheme with

respect to counts 1 through 3 because those crimes were committed before section 667.61 became effective, the parties asked the probation department to submit a supplemental recommendation, which was filed on October 22, 2010. The probation department recommended that the trial court use count 1 as the principal term, impose an upper-term sentence of eight years on that count, impose consecutive two-year sentences on counts 2 and 3 (one-third the middle term of six years), and impose a consecutive eight-month sentence on count 7 (one-third the middle term of two years).

On October 25, 2010, the People filed a sentencing memorandum requesting the trial court to impose "full, separate and consecutive sentences" on counts 1 through 3 based on the 1988 version of section 667.6, subdivision (c), which allowed such sentences to be imposed for, among other crimes, forcible sexual penetration (count 2) and forcible oral copulation (count 3). (Former § 667.6, subd. (c), as amended by Stats. 1987, ch. 1068, § 4, p. 3610.) At the sentencing hearing, the People argued that a full-term consecutive sentence could also be imposed on count 7, even though neither nonforcible lewd or lascivious conduct (count 1), nor exhibiting harmful matter to a minor (count 7), was among the crimes specified in former section 667.6, subdivision (c). The People's argument was based on the current version of section 667.6, subdivision (c) as amended by which provides in part that "[a] term may be imposed consecutively pursuant to this subdivision if a person is·convicted of at least one offense specified in subdivision (e)." According to the People, because counts 2 and 3 were specified crimes, "everything can be full, separate and consecutive," including counts 1 and 7. Apparently agreeing with this analysis, the trial court imposed full-term consecutive sentences on counts 1 through 3 (middle term of six years on each count) and on count 7 (middle term of two years), for a total determinate term of 20 years in prison.

We need not determine whether the People's interpretation of the current version of section 667.6 is correct because, as the Attorney General concedes, the statutory language relied upon by the People to justify imposition of full-term consecutive terms on counts 1 and 7, which are not themselves enumerated crimes, was not part of former section 667.6 when defendant committed these crimes. Thus, imposition of such sentences violated defendant's constitutional right against ex post facto application of the law. (See *People v. Riskin* (2006) 143 Cal.App.4th 234, 244 [49 Cal.Rptr.3d 287].)

## VI

### *Life Sentences on Counts 5 and 6*

The Attorney General also concedes that, under the version of section 667.61 that was in effect at the time defendant committed the crimes alleged

in counts 5 and 6, the trial court was not authorized to impose a term of 15 years to life on both counts because the offenses were committed against a single victim, D.R., on a single occasion. We accept this concession as well.

■ Former section 667.61, subdivision (g), provided: "The term specified in subdivision (a) or (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple victims during a single occasion, the term specified in subdivision (a) or (b) shall be imposed on the defendant once for each separate victim. Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable." (Stats. 1998, ch. 936, § 9, pp. 6874, 6876.) For purposes of this provision, sex offenses occurred on a single occasion if they were committed in close "temporal and spatial proximity." (*People v. Jones* (2001) 25 Cal.4th 98, 107 [104 Cal.Rptr.2d 753, 18 P.3d 674].) For example, where a defendant raped, sodomized, and forced his victim to orally copulate him in the backseat of a car over the course of an hour and a half (*id.* at p. 101), our Supreme Court held that the statute authorized "a *single* life sentence, rather than *three* consecutive life sentences," because the sequence of sexual assaults was committed "during an uninterrupted time frame and in a single location." (*Id.* at p. 107; see *People v. Fuller* (2006) 135 Cal.App.4th 1336, 1343 [38 Cal.Rptr.3d 428] [three rapes occurred on a "single occasion" where they occurred within about an hour and where the only movement was the short distance from the victim's bedroom to the living room].)

Here, defendant's crimes against D.R. occurred on a single occasion, in Debbie B.'s bedroom, while he played a pornographic movie for D.R. Thus, the trial court was authorized to impose one term of 15 years to life under former section 667.61, rather than two such terms. On remand, the trial court must determine which count shall be sentenced pursuant to former section 667.61, subdivision (b). Sentence on the other count "shall be imposed as authorized under any other law, including Section 667.6, if applicable." (Stats. 1998, ch. 936, § 9, pp. 6874, 6876.)

VII

*Consecutive Sentences on Counts 4 through 6*

■ Finally, defendant contends the trial court erroneously believed that consecutive sentences on counts 4 through 6 were required by statute. The record does not demonstrate the trial court operated under such a belief. But since we are remanding for resentencing, we note that former section 667.61, subdivision (g), requires the imposition of a term of 15 years to life for each victim, i.e., S.D. in count 4 and D.R. in either count 5 or count 6. (Stats. 1998,

ch. 936, § 9, pp. 6874, 6876.) However, this provision does not mandate that those terms be served consecutively. (*People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1262 [29 Cal.Rptr.3d 314].) Thus, on remand, the trial court must decide whether to run the life sentence to be imposed on count 4 consecutively to the life sentence to be imposed on either count 5 or count 6.

## DISPOSITION

Defendant's conviction on count 7 is reversed. His remaining convictions are affirmed but the sentences imposed thereon are vacated. The matter is remanded to the trial court with directions to resentence defendant in accordance with the views expressed in this opinion.

Nicholson, Acting P. J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 30, 2013, S206810.