Filed 4/10/14  P. v. Scholl CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056607 |
| v. | (Super.Ct.No. FSB904687) |
| STEVEN GREGORY SCHOLL, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Harold T. Wilson, Jr., Judge.  Affirmed with directions

Law Offices of Sarah A. Stockwell and Sarah A. Stockwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Peter Quon, Jr., and Julianne Karr Reizen, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Steven Gregory Scholl was convicted of possession of child pornography for movies and other images found on his computer, videotapes and compact discs (CDs) depicting child pornography. He was additionally convicted of two misdemeanor counts of unauthorized invasion of privacy for surreptitiously videotaping his estranged wife and her daughter while they were using the master bathroom in the home they all shared.

Defendant makes several claims on appeal as follows:

1. His convictions of unauthorized invasion of privacy must be dismissed because there was insufficient evidence to demonstrate by a preponderance of the evidence that the offenses occurred within the applicable statute of limitations.

2. The trial court imposed improper probation conditions that were not related to the crime, were related to non-criminal conduct and not reasonably related to future criminality.

3 Two of the imposed probation conditions must be reversed as vague because they lacked a knowledge requirement.[1]

We modify the probation conditions but otherwise affirm the judgment.

---

[1] Defendant has filed a petition for writ of habeas corpus (case No. E059118), which we ordered to be considered with the instant appeal. The petition will be resolved by separate order.

# I

## PROCEDURAL BACKGROUND

Defendant was charged by the San Bernardino County District Attorney's office with possession of matter depicting minors engaging in sexual conduct (Pen. Code, § 311.11, subd. (a)).[2] In addition, he was charged with one count of unauthorized invasion of privacy (§ 647, subd. (j)(3)(A)), a misdemeanor, against Ashley M. during the time period of January 1, 2009 through October 15, 2009. He was charged with another misdemeanor violation of unauthorized invasion of privacy (§ 647, subd. (j)(3)(A)) against Sandra S. during the time period of January 1, 2009 through October 15, 2009. Prior to the issue going to the jury, the information was amended as to counts 2 and 3 to allege they occurred between January 1, 2009 and September 9, 2009. Defendant was convicted of all of the charges.

On May 11, 2012, defendant was placed on supervised probation for a period of 36 months under various terms and conditions.

# II

## FACTUAL BACKGROUND

Ashley was born on March 30, 1987. In 1996, when she was 9 or 10 years old, defendant married Ashley's mother, Sandra.[3] In 2008, Sandra and defendant separated. They remained in the same house together because they could not afford their own

---

[2]    All further statutory references are to the Penal Code unless otherwise indicated.

[3]    Sandra died of lung cancer in July 2011.

residences. Ashley lived with her father between 1996 and 2006 and spent some weekends with defendant and Sandra.

In June 2009, Ashley moved back into the house with defendant and Sandra full time. She would oftentimes take a shower in the master bathroom and never gave anyone permission to videotape her.

In September 2009, Sandra found four videotapes in the office of her residence on which she discovered taped over images of Ashley and herself. On September 8, 2009, Sandra took the four videotapes to the Redlands Police Department and gave them to Redlands Police Officer Geoffrey Greeley. He briefly reviewed the videotapes. One of the videotapes showed Ashley sitting on and using the toilet. Another videotape showed Ashley getting dressed in the master bedroom. A third videotape showed Sandra nude, getting in or out of the shower. A fourth video showed Sandra getting dressed in the master bedroom. Sandra and Ashley did not appear to know that they were being videotaped. Sandra suspected that defendant did the videotaping and she was upset about it.

On September 10, 2009, based on what was seen in the videotapes, Detective Cynthia Gourlay obtained a search warrant for the house occupied by Sandra, Ashley and defendant.

During the search of the master bathroom, the officers discovered a hole that had been drilled under the sink and an electronic cord was in the hole. The cord appeared to be an audio-visual cord that could plug into an electronic device. Although no video camera was attached to the wires, it appeared to the officers that Ashley and Sandra were

4

videotaped by a camera attached to this cord. On the other side of the wall of the master bathroom was a second bathroom used by defendant. The hole and cord went into the second bathroom.

A video converter box was found in defendant's bedroom. It could be used to convert videotapes to digitized content that could be viewed on a computer. The office door at the residence was locked when Detective Gourlay and the other officers arrived. Defendant gave the office door key to the officers. Sandra told the officers that defendant used the office and sometimes locked it.

In the office, officers seized 57 CDs contained in a CD holder. A business card bearing defendant's name was found with the CDs. A computer was also seized from the office. Several videotapes were seized. In addition, four thumb drives, which were used to save information from a computer, were also found.

A videotape found in a box in the office labeled "Steve's Stuff" showed Sandra sitting on and using the toilet in the bathroom. Her vagina was visible. The video also showed her naked and getting into the shower. A second videotape showed Ashley sitting on and using the toilet. The video also showed her naked and getting into the shower. Another videotape showed defendant in the master bathroom adjusting the camera.

San Bernardino County Sheriff's Detective Brian Swan was assigned to the high-tech crime detail. He examined the hard drive on defendant's computer. Several search titles appeared on defendant's computer, including "Teen; Hidden Nude; Teen Nude; Teen Masturbate; Nude Teen; Shower; Bath; Girl Bath; Incest; Daughter Bath; Daughter

Hidden; Illegal; Young; and Taboo." Further, Detective Swan found several deleted files that had titles consistent with child pornography.

Detective Swan found three additional movies that were produced by a hidden camera in the bathroom. Two were created[4] on July 30, 2009 and the third was created on July 3, 2009. Two of the movies showed Ashley nude and the third showed Sandra. On the thumb drives, Detective Swan found six recorded video files of the bathroom. The videos had a creation date of July 3, 2009. One of the videos showed Ashley coming out of the shower in the master bathroom. Ashley could not determine her age in the videos.

Detective Swan also reviewed several of the CDs found. One of the CDs, labeled Disc 6, depicted 172 images of children engaged in sexual acts or nude with their genitalia exposed. There were 12 movie files that depicted children under the age of 18 engaged in sexual acts. One image was saved to his computer in 2004. The CD was created or "burned" in 2005.

Disc 7 had an image of a female under the age of 18 with her genitalia exposed and four movies that depicted teenage children involved in sexual acts. The CD was created and downloaded to defendant's computer in 2006. Disc 12 had an image of an underage female engaged in a sexual act. The disc was burned in 2005. Disc 17 had 61

---

**4** Detective Swan provided that the "creation date" was the date the video file was placed on the hard drive of the computer.

images of boys and girls under the age of 18 engaged in sexual acts. The disc was burned in 2002. Disc 19 had 14 images of child pornography and was burned in 2005.

On another of the CDs found, Disc 3, Ashley was recorded in the master bathroom. She estimated she was 20 years old at the time which would have been filmed in 2007 or 2008. Disc 4 contained a movie file created on April 20, 2007. It was burned to a CD on December 2, 2007. The images were of Ashley in the master bathroom. She would have been in her early twenties in 2007. The disc also included images of Ashley's face (taken from her senior portrait) digitally imprinted on nude bodies. One of the images was created on November 3, 2007. It was also burned onto the CD on December 2, 2007.

Disc 12 contained 14 images taken from the hidden camera in the bathroom. Five of the videos showed Ashley in the master bathroom and another of her on the toilet in an adjacent bathroom. Ashley appeared to herself to be 17 or 18 years old. This would have been in 2004 or 2005. More images were on the disc of her in the bathroom in which she appeared to be in her twenties.

Disc 19 had 17 recorded bathroom video files. Six of the videos were of Ashley in the bathroom. They would have been recorded between 2003 and 2005, when she was between the ages of 16 to 18 years old. One other disc showed Ashley in the master bathroom recorded in 2004 or 2005, when she was 17 or 18 years old.

After the search warrant was conducted, Sandra found a small camera inside a sock in the residence and turned the camera over to the Redlands Police Department.

III

ARGUMENT

STATUTE OF LIMITATIONS

Defendant contends that counts 2 and 3 must be dismissed because the People failed to prove by a preponderance of the evidence that the movies from the master bathroom were filmed during the applicable one-year statute of limitations. Respondent contends that defendant forfeited this claim on appeal because the charging documents showed that the prosecution was timely and defendant failed to object on these grounds in the trial court. Defendant responds that if he forfeited the claim, he received ineffective assistance of counsel.

A.  *Additional Factual Background*

After an in-chambers discussion of the instructions, defense counsel noted that "But in regards to 207 and 3500, I raised issue in chambers regarding the dates, potential statute of limitations issues." Defendant did not further explicate the issue on the record. Later, the People made a motion to amend the Information to conform to proof. For count 1, the date was modified to have occurred on or about September 9, 2009. For counts 2 and 3, the time period would be January 1, 2009 to September 9, 2009. The jury was instructed that the time period for counts 2 and 3 was January 1, 2009, and September 9, 2009. There was no further objection by defendant.

B.  *Forfeiture*

Section 647, subdivision (j)(3)(A) defines an act involving the commission of a disorderly conduct misdemeanor as follows: "Any person who uses a concealed

8

camcorder, motion picture camera, a photographic camera of any type, to secretly videotape, film, photograph, or record by electronic means, another, identifiable person who may be in a state of full or partial undress, for the purpose of viewing the body of, or the undergarments worn by, that other person, without the consent or knowledge of that other person, in the interior of a bedroom, bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which that other person has a reasonable expectation of privacy, with the intent to invade the privacy of that other person."

Based on the language of the statute, and respondent does not dispute, the crime occurs at the time the recording or videotaping occurs. As a misdemeanor offense, section 647, subdivision (j)(3)(A) has a one-year statute of limitations. (See § 802, subd. (a); see also *People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1309.)

We first address whether defendant forfeited his claim that the prosecution failed to prove that counts 2 and 3 occurred during the applicable statute of limitations. Our Supreme Court has found that "a defendant may not inadvertently forfeit the statute of limitations and be convicted of a time-barred charged offense . . . . [I]f the charging document indicates on its face that the charge is untimely, absent an express waiver, a defendant convicted of that charge may raise the statute of limitations at any time." (*People v. Williams* (1999) 21 Cal.4th 335, 338 (*Williams*).) "[T]he government cannot overcome the bar of a statute of limitations by demonstrating a lack of prejudice to the defendant." (*People v. Zamora* (1976) 18 Cal.3d 538, 547.)

However, in *Williams*, the court noted that "[T]he problem here is limited to those cases in which the prosecution files a charging document that, on its face, indicates the offense is time-barred." (*Williams, supra,* at p. 344.) *Williams* cited with approval the case of *People v. Padfield* (1982) 136 Cal.App.3d 218. In *Padfield,* the information alleged discovery of the crime within the limitations period. The defendant pleaded guilty but then tried to raise the limitations issue on appeal. (*Id.* at pp. 222-223, 226.) The court held, "[W]hen the pleading is facially sufficient, the issue of the statute of limitations is solely an evidentiary one. The sufficiency of the evidence introduced on this issue does not raise a question of jurisdiction in the fundamental sense." (*Ibid.*) In *People v. Hamlin* (2009) 170 Cal.App.4th 1412, the court noted that if "the People plead facts to avoid the bar of the statute of limitations, and the defendant fails to put the People to their proof in the trial court, then the defendant forfeits the statute of limitations issue and cannot raise it for the first time on appeal. [Citations.]" (*Id.* at p. 1439.)

Another case recently held that a defendant may "forfeit factual issues relating to the statute of limitations when, as here, the information alleges facts indicating that the prosecution was timely." (*People v. Simmons* (2012) 210 Cal.App.4th 778, 793.) The case cited *Padfield* with approval and also rejected the defendant's claim that "the prosecution bears the burden of proving by a preponderance of evidence that the action was commenced within the applicable limitations period." (*Id.* at p. 794.) It held, "While this statement of the rule is generally true, it does not address the forfeiture issue. A more accurate description of the rule is that 'the statute of limitations is a substantive

10

matter which the prosecution must prove by a preponderance of the evidence *if the defense puts the prosecution to its proof*.' [Citations.]" (*Ibid*.)

This case is more akin to *Simmons*. A complaint was filed against defendant on October 29, 2009. Both parties agree that this was the commencement of the prosecution in this case. Hence, the videos had to have been filmed on or subsequent to October 29, 2008. Here, the information originally alleged the crimes were committed between January 1, 2009, and October 15, 2009. This was later amended to an end date of September 9, 2009. Either of these dates clearly alleged a time period after October 29, 2008. As such, the information alleged facts that the prosecution was timely. Defendant has therefore forfeited the ability to raise the issue of the statute of limitations on appeal as a jurisdictional issue.

Moreover, he cannot raise the issue that the People failed to prove by a preponderance of the evidence that the action commenced during the applicable limitations period because he failed to raise the issue in the trial court. (*People v. Simmons, supra,* 210 Cal.App.4th at p. 794.) Nonetheless, the evidence supports that the filming in the bathroom occurred during the time period alleged in the information and as it was presented to the jury. The evidence established that three movies from the bathroom appeared on defendant's computer or the thumb drives on July 3, 2009, and two others on July 30, 2009. Ashley could not determine her age in these videos. The evidence established, by way of Ashley's testimony as to her age in several other films, that defendant had been continuously videotaping in the bathroom since 2004 or 2005. The date one of the movies was transferred to CD coincided with the date it would have

11

been filmed. Absolutely no evidence was presented that supports that defendant stopped filming in the bathroom after October 29, 2008. A preponderance of the evidence establishes that defendant filmed in the bathroom during the applicable statute of limitations.

C. *Ineffective Assistance of Counsel*

As we have noted above, defendant has argued that if it is found that he forfeited the claim, he received ineffective assistance of counsel. In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate, "(1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.] A 'reasonable probability' is one that is enough to undermine confidence in the outcome. [Citations.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687-688.) If defendant cannot establish both deficient performance and prejudice, his claim fails. (*People v. Williams* (1997) 16 Cal.4th 153, 214-215.)

We need not determine if defense counsel's actions fell below an objective standard of reasonableness because defendant cannot demonstrate that counsel's alleged deficient representation prejudiced him, i.e., there is a reasonable probability that, but for counsel's purported failings, defendant would have received a more favorable result. (*People v. Dennis, supra,* 17 Cal.4th at pp. 540-541.) Here, the jury could reasonably conclude that some of the videos were taken during the applicable time period.

As previously noted, Detective Swan testified that he found two movies on defendant's computer that were created on July 30, 2009, and one that was created on July 3, 2009. Two contained images of Ashley and one had images of Sandra recorded in the master bathroom. Ashley could not determine her age in the videos.

In addition, on the thumb drives found in defendant's office, there were movies from the bathroom that were placed on the computer on July 3, 2009. Further, when officers searched the home, a cord for the audio/visual equipment was still in the hole between the bathrooms. Defendant continuously videotaped in the master bathroom and burned the images to CDs or put them on his computer starting in 2004 and, as we have stated, there was no reasonable evidence presented that he stopped videotaping on or before October 29, 2008. As such, since the evidence reasonably established that the charged crimes occurred during the applicable statute of limitations, defendant cannot show he received ineffective assistance of counsel.[5]

---

[5] We note that during closing argument, the prosecutor addressed defendant's argument that Sandra's new boyfriend was the person who videotaped Ashley and Sandra in order to set up defendant. The prosecutor argued, "That doesn't given him opportunity to burn that many C.D.s or make that many videos; and unless he's a time traveler, he can't go back in time and make the videos from 2005 to 2007. And there's no issue with the dates really, because Ashley testifies to her rough age at the time of the videos which coincides with the burn dates on the C.D.s. So the dates are accurate." However, the prosecutor later argued, as for counts 2 and 3, "Now, as to Counts Two and Three, the dates on that is from January 1st, 2009, to September 9, 2009, when the Police were called. Most of the dates - - most of the C.D.s are from prior to that, but the images on the computer say that the file was created in 2009, and the images on the thumb drive the videos say the files were created in July 2009, that's sufficient."

PROBATION CONDITIONS

Defendant makes two legal challenges to a number of the probation conditions imposed.  First, he claims that probation condition Nos. 33, 34, and 35 were improperly imposed because they were not related to the crime for which he was convicted, they related to non-criminal conduct and forbid conduct that was not reasonably related to future criminality.  Further, he contends that probation condition Nos. 33 and 35 were vague because they lacked a knowledge requirement.

A.      *Additional Factual Background*

According to the probation report, the probation department recommended several conditions for defendant if he was granted probation.  Probation condition No. 33 stated, "[n]ot possess or have access to handcuffs, restraint equipment, or other items that could be used for sadomasochistic purposes."  Probation condition No. 34 stated, "not possess personal contact magazines, nor place any ads, nor respond to any ads in such publications unless approved by the probation officer.  Probation condition No. 35 stated, "[n]ot possess or have access to costumes, masks, or other identity-concealing items unless approved by the probation officer."[6]

At the time of sentencing, defendant asked that the proposed probation conditions 33 through 37 be stricken.  An off-the-record discussion was held.  Back on the record,

---

[6]      In the minute order, the probation conditions disputed here are numbered 32, 33, and 34.  We will follow the probation report numbers.

the prosecutor argued condition Nos. 33 through 37 were reasonably related to the charge. The trial court imposed probation condition Nos. 33, 34 and 35 as recommended.

B. *Imposition of Probation Conditions 33, 34 and 35*

Trial courts have broad discretion to set conditions of probation in order "to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1. [Citation.]" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120; see also *People v. Urke* (2011) 197 Cal.App.4th 766, 774.) "[T]he Legislature has empowered the court, in making a probation determination, to impose any 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . .'" (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)

"Generally, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' [Citation.] This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality. [Citation.]" (*People v. Olguin, supra,* 45 Cal.4th at pp. 379-380.)

15

In *Olguin*, a defendant, who was convicted of driving under the influence of alcohol, had imposed as a condition of probation that he inform the probation officer of his place of residence, including any pets at the residence. (*Olguin, supra,* at pp. 378, 380.) Agreeing that the so-called pet condition was not related to the crime, the California Supreme Court nonetheless found that it was reasonably related to the supervision of the defendant and to his rehabilitation. (*Ibid.*)

Here, the probation conditions were reasonably related to the crime of possession of child pornography and unauthorized invasion of privacy. Defendant clearly was shown to have sexually deviant behaviors. The conditions all related to this sexual deviancy. Further, defendant had shown he would use his computer to obtain child pornography images. It was reasonable to restrict his ability to create personal ads in order to preclude him from obtaining other material from either adults or children. Finally, not having masks, or other identity-concealing items assisted in both his supervision and could deter future criminality. All the conditions were reasonably related to defendant's crimes and they were imposed in order to facilitate his supervision and to deter future criminality.

Hence, the trial court did not abuse its discretion in imposing probation conditions Nos. 33, 34 and 35.

C.    *Vagueness Challenge to Probation Conditions 33 and 35.*

A condition of probation or supervised release is unconstitutionally vague when it provides insufficient notice of the prohibited conduct.  "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.'  [Citation.]"  (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.)  "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness.  [Citation.]"  (*Ibid.*)

Defendant contends that probation condition No. 33 is overly broad in its prohibition against sadomasochistic equipment as it does not include a knowledge requirement that both he knowingly possessed such items and knew the character of the items.  We agree and will modify probation condition No. 33.

Further, defendant contends that probation condition No. 35 does not have a knowledge requirement.  We agree and will modify the condition to include a knowledge requirement.

V

DISPOSITION

Probation condition No. 33 is modified to read as follows:  "Not knowingly possess or have access to handcuffs, restraint equipment, or other items that are known to be used for sadomasochistic purposes."  Probation condition No. 35 is modified to read as follows:  "Not knowingly possess or have access to costumes, masks or other identity-concealing items unless approved by the probation officer."

17

The trial court is directed to forward a certified copy of the probation order to the probation authorities. As so modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.