Filed 5/31/13  P. v. Herrarte CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br> v.<br><br> CARLOS ENRIQUE HERRARTE,<br><br>  Defendant and Appellant. | B240315<br><br> (Los Angeles County<br> Super. Ct. No. KA094642) |

APPEAL from a judgment of the Superior Court of Los Angeles County, George Genesta, Judge.  Reversed in part, modified in part, affirmed in part and remanded.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Lawrence M. Daniels, Eric E. Reynolds and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Carlos Enrique Herrarte, of 21 sex offenses against 5 victims. He was sentenced to 270 years to life in state prison. We reverse the sentence in part and modify the judgment in part.

# II. THE EVIDENCE

## A. R.

Defendant married R. and B.'s mother in 1995. At the time, R. was eight years old. Defendant sexually abused R. from that time until she was in high school. He repeatedly—three to four times a week—inserted his finger into her vagina, orally copulated her, and forcibly raped her. At times defendant slapped her and threw her to the floor. In 2003, when R. was in tenth grade, her family moved into a house with another family. The other family had two young girls, Lorena and Rosario. After the move, defendant stopped having vaginal sex with R., but he continued to touch her breasts and vagina. Defendant had a bad temper and R. was afraid of him. If his abuse was revealed, defendant repeatedly threatened to harm R.'s mother. Defendant was removed from the home when R. was 18.

## B. B.

Defendant also sexually abused R.'s younger sister, B. Beginning when B. was eight or nine years old, defendant repeatedly touched her breasts and vagina. B. was uncertain whether defendant had inserted his fingers inside her vagina. Defendant had a temper and B. was afraid of him. When B. was 16, she ran away from home to avoid defendant's abuse. She contacted the police. An officer spoke with B. and then with defendant. The officer told B. to return home. B. complied. B.'s mother asked what had

2

happened. B. then revealed defendant's abuse. Nevertheless, defendant continued to live in the home. Two or three months later, however, after a social worker became involved with the family, defendant left the home.

## C. Lorena

Defendant was a friend of Lorena's mother. In 2003 Lorena was in third grade. Defendant and his family moved in with Lorena's family. One night that same year, Lorena's mother was sleeping with defendant. Lorena was sleeping between them. In the middle of the night, defendant reached over and inserted one or more fingers into Lorena's vagina. Lorena moved away from him because it hurt. On two subsequent occasions, defendant tried to hug Lorena but she ran away. When Lorena was still in third grade, the police came to the house and arrested defendant.

## D. Rosario

Lorena's older sister Rosario was in fourth grade when defendant and his family moved into their house. Prior to that time, defendant had pulled Rosario close to his body and hugged her several times. After defendant began living with Rosario and her family, he tried to hug her and kiss her on the neck whenever they were alone. He also touched her legs and chest over her clothing. He tried to touch her breasts under her shirt but she fought him off. One evening, while Rosario was still in fourth grade, defendant assaulted her. He covered her mouth with his hand and took her into the living room. He lay on top of her and began kissing her mouth, neck and upper chest. He touched her legs and tried to put his hand inside her shorts. Rosario threatened to scream if he did not let her go. Rosario kicked defendant and ran to her room. Rosario locked herself in her bedroom whenever she was left alone with defendant, but he would open the door somehow. He would tell Rosario to come to his room with him and she was going to like what he was going to do to her. Defendant threatened Rosario if she disclosed his

3

abusive conduct. Rosario described his threat: "[H]e told me that if I ever told anybody he was going to send -- he was going to call the cops on my Mom and send her to Mexico and we were going to stay here in an orphanage." Rosario told a fourth grade teacher about the sexual abuse. The teacher called the police. The police took defendant away.

## E. A.

In 2008, defendant began dating A.'s grandmother. In 2008, A. was 12 years old. Then he moved in with A.'s family. Defendant began touching A. when they were alone together. At first, he touched her over her clothing. Later defendant put his hands inside her pants. He touched her vagina and put his fingers inside her vagina. A. told defendant to leave but he ignored her. He exposed his penis and touched it until, in her words, "white stuff" came out. Defendant threatened A. if she told anyone. On another occasion, defendant inserted his fingers into her vagina, orally copulated her, touched his penis with his hands and ejaculated. Defendant continued to sexually abuse A. This occurred whenever A.'s mother and grandmother were not home. When A. was 13, defendant forcibly held her down and raped her. Between 2008 and June 2011, defendant raped A. more than 20 times. He orally copulated her three times. And defendant masturbated to ejaculation more than five times. At one point, A.'s grandmother caught them having sex. A.'s grandmother scolded defendant. The grandmother told defendant not to do it again or she would call the police. On June 16, 2011, A. went on an errand with defendant. On the return trip, defendant drove to an industrial area and parked the car. He touched her vagina and masturbated until he ejaculated. The following day, June 17, 2011, A.'s cousin called the police.

## F. Loren

A.'s cousin, Loren, testified to uncharged sexual conduct. As noted above, A.'s and Loren's grandmother dated defendant. During one of their dates, defendant met Loren. When Loren was 15, defendant pushed her into a car. He got in and closed the

4

door. Defendant began talking about his sex life with Loren's grandmother. He said Loren's grandmother would not give him sex. Defendant told Loren he had a sexual relationship with A. Loren told defendant to stop talking about it. Defendant put his hand on Loren's thigh and moved his hand toward her crotch. Loren said, "Don't touch me." She pushed him away. She tried to get out of the car. Defendant grabbed her hand and said, "Don't get out." Just then Loren's mother walked up to the car. Loren opened the car door and got out. Loren's brother called the police after she told him what had happened.

## G. M.

Defendant's stepsister, M., also testified to uncharged sexual conduct. When she was between 8 and 10 years old, defendant started molesting her. He inserted his fingers into her vagina. From ages 14 to 19, defendant repeatedly raped M. He covered her mouth while he raped her so she could not scream. He threatened to kill her if she told anyone about the abuse. M. admitted using methamphetamine since she was 18.

## H. Detective Terrence Smith

Detective Smith was the investigating officer. He interviewed M. at her home in June 2011. M. told Detective Smith that defendant began having sex with her when she was about nine years old. He started by digitally penetrating her vagina. When she got a little older, he began having vaginal sex with her. They had vaginal sex in the school parking lot when he took her to school. M. said defendant forced her to have sex by holding her down and by threatening to kill her if she told anyone. M. told Detective Smith that defendant used what she believed was methamphetamine. He offered it to her as well. M. said she got "hooked" on it.

5

Detective Smith also interviewed A. in June 2011. A. said that initially defendant's sexual abuse consisted only of digital penetration. This happened most days when A. came home from school and defendant was the only one there. Later, defendant forced her to have vaginal sex with him. He held her down. He threatened her with harm if she told anyone. At other times, defendant fondled her vagina and masturbated. On one occasion, A.'s grandmother walked in when they were having sex. The grandmother scolded defendant and told him not to do it again or she would call the police. A. told Detective Smith she was afraid of defendant.

## III. DISCUSSION

### A. Uncharged Acts

Defendant asserts the trial court abused its discretion and violated his equal protection and due process rights by admitting uncharged sex offenses evidence under Evidence Code section 1108, subdivision (a). Defendant contends the evidence of other sexual conduct was: inflammatory; likely to motivate the jury to punish him for the uncharged acts; and too dissimilar to be probative. Defendant concedes that remoteness and undue consumption of time are not at issue in this case. We find defendant forfeited this argument and, in any event, there was no abuse of discretion.

Defendant did not object to the uncharged acts evidence in the trial court. As a result, his argument has been forfeited. (*People v. Valdez* (2012) 55 Cal.4th 82, 130 [Evid. Code, § 1101]; *People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1099 [Evid. Code, § 1108].) Even if the issue were properly before us, we would find no abuse of discretion. Evidence Code section 1101 states in part: "(1) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion. [¶] (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to

6

prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act." Evidence Code section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." As our Supreme Court explained in *People v. Falsetta* (1999) 21 Cal.4th 903, 911: "[S]ection 1108 was intended in sex offense cases to relax the evidentiary restraints section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility. In this regard, section 1108 implicitly abrogates prior decisions of this court indicating that 'propensity' evidence is per se unduly prejudicial to the defense. (See, e.g., *People v. Alcala* (1984) 36 Cal.3d 604, 630-631.)" As our Supreme Court stated in *People v. Villatoro* (2012) 54 Cal.4th 1152, 1164: "[T]he clear purpose of section 1108 is to permit the jury's consideration of evidence of a defendant's propensity to commit sexual offenses. 'The propensity to commit sexual offenses is not a common attribute among the general public. Therefore, evidence that a particular defendant has such a propensity is especially probative and should be considered by the trier of fact when determining the credibility of a victim's testimony.' [Citations.]" (See *People v. Falsetta, supra,* 21 Cal.4th at p. 915.)

We examine the admissibility of the uncharged offenses evidence under Evidence Code section 352. (§ 1108, subd. (a); *People v. Loy* (2011) 52 Cal.4th 46, 63; *People v. Reliford* (2003) 29 Cal.4th 1007, 1012-1013.) Evidence Code section 352 states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Our review of a trial court's decision under section 352 is for an abuse of discretion. (*People v. Avila* (2006) 38 Cal.4th 491, 578; *People v. Cole* (2004) 33 Cal.4th 1158, 1195.) Our Supreme Court has held, "A trial court abuses its discretion

7

when its ruling 'fall[s] "outside the bounds of reason."' (*People v. Ochoa* (1998) 19 Cal.4th 353, 408, quoting *People v. DeSantis* (1992) 2 Cal.4th 1198, 1226.)" (*People v. Waidla* (2000) 22 Cal.4th 690, 714; accord, *People v. Fuiava* (2012) 53 Cal.4th 622, 663.) Our Supreme Court has further held: "A trial court's exercise of discretion under [Evidence Code] section 352 will be upheld on appeal unless the court abused its discretion, that is, unless it exercised its discretion in an arbitrary, capricious, or patently absurd manner. (*People v. Williams* (2008) 43 Cal.4th 584, 634–635; [*People v.*] *Rodrigues* [(1994)] 8 Cal.4th [1060,] 1124–1125.)" (*People v. Thomas* (2012) 53 Cal.4th 771, 806.

In *People v. Harris* (1998) 60 Cal.App.4th 727, 737-741, the Court of Appeal for the Third Appellate District set forth five factors to be considered in making the Evidence Code sections 352 and 1108 determinations. They are the: inflammatory nature of the uncharged acts evidence; probability of confusing the jury; remoteness in time of the uncharged act or acts; consumption of time to introduce the evidence; and probative value of the evidence. (Accord, *People v. Hernandez* (2011) 200 Cal.App.4th 953, 965-966; *People v. Branch* (2001) 91 Cal.App.4th 274, 282; see *People v. Ewoldt* (1994) 7 Cal.4th 380, 404-406.) Similarly, in *People v. Falsetta, supra,* 21 Cal.4th at page 917, our Supreme Court held that in ruling on the admissibility of evidence under Evidence Code sections 352 and 1108: "[Trial courts] must engage in a careful weighing process under [Evidence Code] section 352. Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offense, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]" (See *People v. Lewis* (2009) 46 Cal.4th 1255, 1285, fn. 18.)

8

Had an objection been interposed and overruled, we would find no abuse of discretion. The uncharged acts that M. and Loren testified to were no more or less inflammatory than that described by R., B., Lorena, Rosario and A. Defendant began to assault each victim at an early age. Each of the victims, including M., described similar acts. In each case, defendant used physical force and verbal threats to achieve his abuse. He took advantage of his relationships with other family members to gain access to his victims. His sexual assaults progressed from touching over the clothing, to digital penetration, to vaginal sex. And given the overwhelming evidence of defendant's guilt, there is no likelihood the jury punished defendant for the uncharged acts.

To the extent defendant raises federal constitutional claims distinct from his abuse of discretion argument, he forfeited them by failing to assert them in the trial court. (*People v. Riggs* (2008) 44 Cal.4th 248, 292; *People v. Partida* (2005) 37 Cal.4th 428, 437-438.) Even if not forfeited, defendant's federal constitutional claims are without merit for the same reasons we rejected his Evidence Code section 352 argument. Our Supreme Court has held, "To the extent any constitutional claim is merely a gloss on the [Evidence Code section 352 argument], it . . . is without merit because the trial court did not abuse its discretion in admitting the evidence. ([*People v.*] *Prince* [(2007)] 40 Cal.4th [1179,] 1229.)" (*People v. Riggs, supra,* 44 Cal.4th at p. 292.)

## B. Hearsay

R. testified as follows: "[Deputy District Attorney Taraneh Saba]: Okay, [R.], we were talking about a time when [defendant] was removed from the home you shared with this other family, yes? [¶] A. Yes. [¶] Q. How old were you when that happened? [¶] A. I was 18. [¶] Q. So how did that come about? [¶] A. All of a sudden I came home from school, my mom had gone and picked me up, . . . [and] my mom told me that they had taken [defendant] away. [¶] [Deputy Public Defender Manuel Marin]: Objection. Hearsay. [¶] The Court: Is this offered for her state of mind only to explain her later actions? [¶] Ms. Saba: Yes. It leads into defendant's further actions. [¶] The Court:

9

Ladies and gentlemen, the evidence of what her mother told her is not offered for the truth of the content of that statement, but simply explains the later actions of this witness, and you will treat it as such." R. testified defendant subsequently returned to the house, drunk and angry and insisting that he be let in. He spoke to R.'s mother. Defendant admitted he had sex with R. This was the first time R.'s mother heard about the abuse.

Defendant argues admitting the foregoing evidence deprived him of his due process and fair trial rights. Any error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. McKinnon* (2011) 52 Cal.4th 610, 673-674.) The jury knew defendant had been arrested at least once because he was being prosecuted. Moreover, B. testified defendant left the home after she called the police. Lorena testified that when she was in third grade, the police came to the house and arrested defendant. Rosario testified: a teacher was informed about defendant's abuse; the teacher called the police; and the police took defendant away. A. testified a cousin called the police and reported the abuse. And Loren testified she told her brother about her encounter with defendant. Loren's brother called the police. In light of the foregoing testimony and the overwhelming evidence of guilt, that R.'s mother said defendant had been removed from the home was harmless beyond a reasonable doubt.

## C. Sentencing

### 1. The Restitution Fine

Defendant challenges the $5,000 restitution fine imposed under Penal Code section 1202.4, subdivision (b), as an impermissible increased punishment based upon judicially determined facts. He cites *Southern Union Co. v. United States* (2012) 567 U.S. __ [132 S.Ct. 2344]. That contention is without merit. (*People v. Kramis* (2012) 209 Cal.App.4th 346, 351-352.) The restitution fine imposed in the present case was within the statutory range.

10

## 2. Section 667.61, Subdivision (b)

Defendant was convicted in count 11 of, between January 1 and December 31, 1996, committing continuous sexual abuse of a child in violation of section 288.5, subdivision (a).  The jury further found true the section 667.61, subdivision (e)(4) multiple victims allegation.  Defendant was sentenced to 15 years to life under section 667.61, subdivision (b).  Section 288.5, criminalizing continuous sexual abuse of a child, was enacted in 1989.  (Stats. 1989, ch. 1402, § 4.)  However, it was not an offense subject to sentencing under section 667.61, subdivision (b) until September 20, 2006.  (§ 667.61 as amended by Stats. 2006, ch. 337, § 33.)  The mandatory indeterminate life sentences for repeat sex offenders under section 667.61 cannot be imposed ex post facto.  (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9; *People v. Simmons* (2012) 210 Cal.App.4th 778, 796-797; *People v. Riskin* (2006) 143 Cal.App.4th 234, 243-245; see *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 933.)  Therefore, defendant could not lawfully be subject to a 15-year-to-life sentence on count 11.  At the time defendant committed the continuous sexual abuse, in 1996, the applicable sentence was 6, 12, or 16 years.  (Former § 288.5, subd. (a) as added by Stats. 1989, ch. 1402, § 4.)

Defendant was convicted in count 24 of sexual penetration by foreign object with a child under 14 in violation of section 289, subdivision (j).  The dates of the charged offenses were between January 1 and October 31, 2003.  The jury further found true the multiple victims allegation under section 667.61, subdivision (e)(4).  Defendant was sentenced to 15 years to life in state prison under section 667.61, subdivision (b).  However, a violation of section 289, subdivision (j) is not an offense subject to sentencing under section 667.61, subdivision (b).  The authorized term of imprisonment is three, six, or eight years.  (§ 289, subd. (j), as amended by Stats. 2002, ch. 302, § 5, eff. Jan. 1, 2003, to Sept. 8, 2010.)  Upon remittitur issuance, defendant is to be resentenced on these determinate terms.

11

## D.  The Sex Offense Fine

The trial court imposed a $500 Penal Code section 290.3, subdivision (a) sex offender fine.  We presume the trial court determined defendant did not have the ability to pay any additional Penal Code section 290.3, subdivision (a) fines for his other convictions.  (*People v. Walz* (2008) 160 Cal.App.4th 1364, 1371; see *People v. Burnett* (2004) 116 Cal.App.4th 257, 261-262.)  However, the amount of the fine for defendant's first qualifying conviction is $300, not $500.  (Pen. Code, § 290.3, subd. (a).)  The judgment must be modified to impose a Penal Code section 290.3, subdivision (a) fine in the amount of $300 plus applicable penalty assessments.  The abstract of judgment must be amended accordingly.

## E.  The Abstract Of Judgment

The abstract of judgment contains the following order:  "Defendant to pay a crime prevention fee of $10.00 per PC section 1202.5, plus a penalty assessment of $28.00 plus 20% surcharge of $2.00 per PC section 1465.7, for total of $40."  The trial court did not so order.  The abstract of judgment must be modified to delete that order.  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 387-388; see *People v. Sanchez* (1998) 64 Cal.App.4th 1329, 1331-1332; *People v. Rowland* (1988) 206 Cal.App.3d 119, 123-124.)

## IV.  DISPOSITION

The judgment is reversed with respect to defendant's sentence on counts 11 and 24.  Upon remittitur issuance, defendant must be resentenced on these counts.  The judgment is modified to impose a Penal Code section 290.3, subdivision (a) sex offense fine in the amount of $300 rather than $500.  The amended abstract of judgment must omit any reference to a $10 fine under Penal Code section 1202.5, and reflect a $300 sex offense fine (Pen. Code, § 290.3, subd. (a)), plus applicable penalty assessments.  In all

other respects, the judgment is affirmed.  Upon remittitur issuance, and following resentencing, the clerk of the superior court must amend the abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.

We concur:


KRIEGLER, J.                                    O'NEILL, J.*

---

\*      Judge of the Ventura County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.