Filed 8/24/16  P. v. Newell CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C075741 |
| v. | (Super. Ct. No. 12F06394) |
| JEFFERY ALBERT NEWELL, | |
| Defendant and Appellant. | |

During the summer of 2006, while watching his girlfriend's three granddaughters, defendant Jeffery Albert Newell touched two of the girls in a lewd or lascivious manner. The girls were 7 years old and 10 years old, respectively.[1]  Defendant was convicted by jury of four counts of committing a lewd or lascivious act upon a child under the age of

---

[1]     Because the girls have the same initials, we refer to them as the 7-year-old victim and the 10-year-old victim throughout this opinion.

14 years―two such acts committed against each child (Counts 1, 2, 4, and 5).[2] The trial court sentenced him to serve an aggregate determinate term of 12 years in state prison.

On appeal, defendant contends: (1) his prosecution for the lewd or lascivious conduct alleged in the counts of conviction was barred by the statute of limitations; (2) the trial court abused its discretion and violated his constitutional right to due process by admitting evidence defendant committed other sexual offenses against the 10-year-old victim "without knowing what the evidence was"; and (3) the trial court erred and further violated his constitutional rights by giving the jury a version of CALCRIM No. 1191, regarding the proper use of uncharged sexual offense evidence, that "was flawed because it failed to identify the uncharged sexual offense and failed to set out the elements of [that] offense."

We affirm. As we explain, defendant's prosecution for the lewd or lascivious conduct alleged in Counts 1, 2, 4, and 5 was commenced within the applicable limitations period. His claim of evidentiary error is forfeited. And while we agree the jury was provided with a flawed version of CALCRIM No. 1191, the error was harmless.

FACTS

In 2006, defendant lived with his girlfriend, L.E., in Sacramento. During a week-long period that summer, while babysitting L.E.'s 3 granddaughters, defendant sexually abused 2 of the girls, one 7 years old and the other 10 years old.[3] The specific details of

---

[2] Defendant was acquitted of 5 additional counts of lewd or lascivious conduct, one alleged to have been committed against the 7-year-old victim (but 6 years later when she was 13 years old (Count 3)), and 4 alleged to have been committed against his girlfriend's foster son (6 to 8 years before the offenses of conviction were committed (Counts 6-9)).

[3] The third granddaughter was two years old at the time and denied she was ever abused by defendant.

defendant's crimes are not important to our resolution of this appeal. For our purposes, it will suffice to state he touched each girl's breasts and buttocks multiple times while alone with them during this week-long time period.

The abuse came to light in 2012, when L.E.'s foster son, A.D., accused defendant of sexually abusing him between 1998 and 2000.[4] A.D. told his foster sister, M.D., who was one of L.E.'s biological daughters, about this alleged abuse, prompting M.D. to tell her biological sister, S.C., the 7-year-old and 10-year-old victims' mother, about A.D.'s allegations. Concerned about her daughters, S.C. asked them whether defendant had ever done anything that made them feel uncomfortable. The girls initially looked "puzzled" and did not reveal anything. Later in the evening, the 7-year-old victim (13 years old at the time) started to cry and told her mother defendant had touched her inappropriately. The 10-year-old victim (16 years old at the time) then revealed defendant "did it to her, too." S.C. contacted the police the following day.

The 7-year-old and 10-year-old victims both testified against defendant at trial. Their testimony concerning the abuse alleged in the counts of conviction was largely consistent with prior statements the older girl made during a police interview and the younger girl made during a Special Assault Forensic Evaluation (SAFE) interview, each conducted in 2012. These interviews were played for the jury. One discrepancy between the 10-year-old victim's testimony and her prior statements made during the police interview was that these prior statements omitted an incident she testified occurred during the same week defendant babysat her and her sister in the summer of 2006. This

---

[4]     A.D. testified to the details of these allegations that formed the basis for Counts 6 through 9. As mentioned, the jury acquitted defendant of these counts. We provide greater detail as to their content in the discussion portion of the opinion.

3

incident, which will be described in greater detail in the discussion portion of the opinion, was not disclosed until 2013, after the charges in this case were filed.

J.Z., a childhood friend of the 10-year-old victim, also testified at trial. She testified the 10-year-old victim revealed the molestation to her while they were children, but made her promise not to tell anyone, a promise she kept until interviewed by the police in connection with this case. The prosecution's case also included testimony from an expert in child sexual abuse accommodation syndrome (CSAAS), who explained certain misconceptions a person might have regarding the behavior of child sexual abuse victims, e.g., a child victim of sexual abuse would immediately and fully disclose the abuse rather than delay disclosure and initially provide an incomplete account of that abuse.

Defendant testified in his own defense and denied the allegations. L.E. also testified for the defense. While she initially believed her granddaughters, she changed her mind after reading the police reports and found what she considered to be inconsistencies. Various friends and relatives of defendant testified they never observed any inappropriate behavior and did not believe the allegations. The defense also called two expert witnesses, one of whom testified about interviewing victims of child abuse, specifically, factors affecting an interviewer's ability to determine whether or not a child's accusation is true. The other defense expert, a psychologist specializing in sex offender evaluation and treatment, interviewed defendant and testified he did not meet the criteria to be diagnosed as a pedophile.

DISCUSSION

I

*Statute of Limitations*

Defendant contends Counts 1, 2, 4, and 5 were barred by the statute of limitations. Acknowledging this contention was not raised in the trial court, defendant asserts the information, on its face, shows the prosecution of these counts was untimely, which may be raised for the first time on appeal. (See *People v. Williams* (1999) 21 Cal.4th 335, 341.) We conclude these counts were brought within the applicable limitations period.

The original complaint in this case was filed in October 2012. Defendant was arraigned on this complaint the same month. In March 2013, the complaint was deemed an information and defendant was held to answer for the charges. As to Counts 1, 2, 4, and 5, the information alleged the crimes occurred in 2006. The information also alleged the victims were "age 7 to 8 years" and "age 10 to 11 years," respectively.

Defendant's argument is based on the premise the six-year limitations period of Penal Code section 800 applies to these counts.[5] However, as the Attorney General points out, the premise is flawed. The applicable statute of limitations is actually found in section 801.1, subdivision (a).

At the time defendant violated section 288, as alleged in Counts 1, 2, 4, and 5, section 801.1 provided: "(a) *Notwithstanding any other limitation of time described in*

---

[5]     This section provides, with an exception not relevant here, "prosecution for an offense punishable by imprisonment in the state prison for eight years or more . . . shall be commenced within six years after commission of the offense." Lewd or lascivious conduct committed upon a child under the age of 14 years is punishable by imprisonment in the state prison for three, six, or eight years. (Pen. Code, § 288, subd. (a).) Undesignated statutory references are to the Penal Code.

*this chapter*, prosecution for [a number of sex offenses, including violation of section 288], that is alleged to have been committed when the victim was under the age of 18 years, may be commenced any time prior to the victim's 28th birthday. [¶] (b) *Notwithstanding any other limitation of time described in this chapter*, if subdivision (a) does not apply, prosecution for a felony offense described in [former section 290, subdivision (a)(2)(A)] shall be commenced within 10 years after commission of the offense." (Stats. 2005, ch. 479, § 2, p. 3791, italics added.) At that time, former section 290, subdivision (a)(2)(A), included violation of section 288 as one of the described offenses. (Stats. 2005, ch. 722, § 3.5, pp. 5888-5902.)[6]

Because the phrase "any other limitation of time described in this chapter" includes the six-year limitations period described in section 800, if either of the extended limitations periods described in section 801.1 applies to Counts 1, 2, 4, and 5, this extended period applies notwithstanding the fact the limitations period would otherwise be six years. The subdivision (b) limitations period applies only "if subdivision (a) does not apply." (§ 801.1, subd. (b).) And as the Attorney General correctly observes, the information alleges facts making applicable the subdivision (a) limitations period. Specifically, the information alleges sometime in 2006, defendant violated section 288 against two victims who were under the age of 18 years, "7 to 8" and "10 to 11," which made them, at the oldest, 15 and 18 years old, and therefore not yet 28 years old, when the prosecution commenced.

---

[6] The current version of section 801.1 extends the subdivision (a) limitations period to the victim's 40th birthday and replaces the subdivision (b) reference to former section 290, subdivision (a)(2)(A), with current section 290, subdivision (c), that also includes violation of section 288 as a described offense. (§ 801.1; Stats. 2014, ch. 921, § 1.)

Defendant does not dispute any of this. Instead, he argues the Attorney General may not rely on the limitations period set forth in section 801.1, subdivision (a), because this provision's applicability was "never pled and proved by the prosecution." He is mistaken. As already explained, the prosecution did plead facts bringing the prosecution within the limitations period of section 801.1, subdivision (a). Those facts were also proved at trial. Indeed, defendant does not dispute on appeal the crimes (violations of section 288) were committed against victims who were under the age of 18 years or that the prosecution was commenced prior to their 28th birthdays. Defendant cites us to no authority holding the information must also include citation to the specific statute relied upon as setting forth the applicable limitations period. Nor does defendant adequately distinguish *People v. Simmons* (2012) 210 Cal.App.4th 778, in which we held the limitations period set forth in section 801.1, subdivision (a), applied to one of the counts of conviction despite the fact this provision's applicability was not specifically pled in the information or argued at trial. There, as here, this limitations period applied as a matter of law to undisputed facts alleged in the information. (*Id*. at pp. 787-788.) "Where, as here, the evidence is not in dispute and we need not make any factual determinations on the record before us, we may independently resolve the statute of limitations issue on appeal." (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1271 [prosecution was timely commenced under section 801.1, subdivision (b), even though this provision's applicability was raised for the first time on appeal].)

We also reject defendant's related argument that principles of due process prevent the Attorney General from relying on section 801.1, subdivision (a), for the first time on appeal. A similar argument was rejected in *People v. Hollie*, *supra*, 180 Cal.App.4th 1262. Defendant attempts to distinguish that case by noting the statute of limitations issue was raised at trial in that case and, therefore, the defendant therein "had notice of

7

the statute of limitations issue." Defendant ignores the fact the statute of limitations issue was raised *by the defendant* in that case, and the prosecution responded, not by raising section 801.1, but with a tolling argument under section 803, subdivision (g), that the trial court accepted. (*Id*. at pp. 1269-1270.) The Court of Appeal held the prosecution was timely commenced under section 801.1, subdivision (b), despite the fact this provision's applicability was raised by the Attorney General for the first time on appeal, because the record allowed resolution of the issue as a matter of law based on undisputed facts. (*Id*. at pp. 1270-1271.) The same reasoning applies here. Because the information filed in this case apprised defendant of the facts rendering applicable the limitations period set forth in section 801.1, subdivision (a), and rendering the prosecution timely under that provision, we conclude defendant was afforded his right to due process.

We conclude defendant's prosecution for the lewd or lascivious conduct alleged in Counts 1, 2, 4, and 5 was commenced within the applicable limitations period, i.e., that found in section 801.1, subdivision (a).[7]

## II

### *Admission of Other Sexual Offense Evidence*

Defendant also claims the trial court abused its discretion and violated his right to due process by admitting evidence he committed other sexual offenses against the 10-

---

[7] This conclusion also disposes of defendant's related claim the evidence was not sufficient to prove the prosecution was commenced within the six-year limitations period of section 800. There is no assertion the evidence fell short of proving the prosecution was commenced within the limitations period of section 801.1, subdivision (a). Moreover, because the information on its face alleges facts satisfying this provision, and because defendant did not raise any factual issue as to whether or not the prosecution was commenced within this limitations period at trial, he has forfeited any such argument on appeal. (See *People v. Simmons*, *supra*, 210 Cal.App.4th at p. 791.)

8

year-old victim "without knowing what the evidence was." We conclude the claim is forfeited.

## A.

### *Additional Background*

The prosecution moved *in limine* to admit evidence of a "final disclosure" made by the 10-year-old victim in June 2013, after the charges in this case were filed, as evidence of "another sexual offense or offenses" under Evidence Code section 1108 to prove defendant's disposition to commit the charged offenses. During the hearing on the motion, the trial court stated it was "not sure" what this disclosure was, did not recall whether it was recounted in the briefing, and asked defense counsel whether she knew "what the motion was addressing." Defense counsel responded: "Yes, Your Honor. She does add additional allegations in that follow-up interview in June. I am prepared to object and submit. I don't believe the case falls on my side on this issue." The trial court ruled the 10-year-old victim's disclosure of other sexual offenses committed "within the time frame generally addressed in the charged offenses" was admissible under Evidence Code sections 1108 and 352, explaining such other offenses would not be "too old or too remote," nor would they be "different in character such that the risk of prejudice is so great that it would overshadow the charged offenses."

At trial, the 10-year-old victim testified that, at some point during the week defendant watched her and her sister in the summer of 2006, while he was naked and watching a pornographic movie, he had her and the 7-year-old victim remove their clothes, touched the 10-year-old victim's breasts and vagina, and also asked the 7-year-old victim to get him some lotion, although she did not recall any lotion being used. The 7-year-old victim testified she remembered defendant showing her the cover of a pornographic DVD, but did not remember watching the movie, being naked with her

9

sister and defendant while doing so, or witnessing defendant touching her sister's breasts or vagina. Defense counsel did not renew her objection to this evidence when it was offered at trial.

## B.

### *Forfeiture*

"Generally when an *in limine* ruling that evidence is admissible has been made, the party seeking exclusion must object at such time as the evidence is actually offered to preserve the issue for appeal. [Citations.] The reason for this rule is that until the evidence is actually offered, and the court is aware of its relevance in context, its probative value, and its potential for prejudice, matters related to the state of the evidence at the time an objection is made, the court cannot intelligently rule on admissibility." (*People v. Jennings* (1988) 46 Cal.3d 963, 976, fn. 3.)

There are two exceptions to this rule of forfeiture. First, where the parties stipulate or the trial court specifically rules the *in limine* ruling is binding at trial, the issue will be preserved for appellate review. (*People v. Morris* (1991) 53 Cal.3d 152, 190-191 (*Morris*), disapproved on another point in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.) Neither happened here. Second, where the *in limine* ruling is "sufficiently definite and express" to render further objection futile, the issue will also be preserved for appellate review. (*People v. Brown* (2003) 31 Cal.4th 518, 547; *Morris*, *supra*, 53 Cal.3d at pp. 189-190.) The question under this exception is whether the *in limine* objection "satisfies the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context." (*Morris*, *supra*, at p. 190.) If each of these

requirements is satisfied, defense counsel would be "justified in concluding that a mere repetition of the same objection advanced on the motion *in limine* would serve no useful purpose." (*Id*. at p. 189.)

Here, the *in limine* motion was made by the prosecution and sought to admit evidence of the pornographic movie incident under Evidence Code section 1108. In response, defense counsel offered a non-specific objection and submitted the matter, acknowledging she did not believe the objection to be meritorious. On appeal, defendant challenges the admission of this evidence under Evidence Code sections 1108 and 352, and as violating his constitutional right to due process. Thus, the specific legal grounds raised on appeal were not advanced during the *in limine* hearing. This alone takes the case outside the exception to the general rule that defendant was required to object at the time the evidence was actually offered during the trial, i.e., when the 10-year-old victim testified.

Moreover, while the prosecution's motion was directed at an identifiable body of evidence, as defendant correctly observes, the trial court appeared not to know what the evidence was when ruling on the motion. This is a problem. (See *People v. Holford* (2012) 203 Cal.App.4th 155, 174 ["nature of discretion requires that the court's decision be an informed one"].) But it is a problem defense counsel could have remedied. Instead, when the trial court asked whether defense counsel knew "what the motion was addressing," counsel simply stated the 10-year-old victim made "additional allegations" of abuse. This would not have indicated to the trial court that these additional allegations were claimed to be "highly inflammatory" and "more inflammatory than the . . . charged offenses," as defendant argues on appeal. Regardless of who was at fault for the trial court's inability to properly rule on the objection during the *in limine*

11

hearing,[8] without knowing what the evidence was, the trial court was not in a position to "determine the evidentiary question in its appropriate context" at that point in time (*Morris*, *supra*, 53 Cal.3d at p. 190), and therefore, a renewed and more specific objection when the 10-year-old victim actually testified would not have been rendered futile by the prior ruling.

Because two of the three conditions set forth in *Morris, supra,* 53 Cal.3d 152 for preserving an issue for appellate review based on an *in limine* ruling have not been satisfied, we must conclude the general rule applies, i.e., a specific objection must be made when the challenged evidence is actually offered at trial. Defendant failed to make such an objection. The claim is therefore forfeited.

### III

### *Instructional Error*

Defendant further asserts the trial court prejudicially erred and violated his federal constitutional right to due process by giving the jury a "flawed" version of CALCRIM No. 1191, regarding the proper use of uncharged sexual offense evidence. We agree the instruction was flawed, but conclude the error was harmless.

CALCRIM No. 1191, as given to the jury in this case, provided: "The People presented evidence that the defendant committed instances of sexual offenses that were not charged in this case. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged sexual offenses. [¶] Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a

---

[8] The prosecution offered a specific description of the proffered evidence in the motion, albeit at the end of a lengthy statement of facts, and did not volunteer to repeat the offer of proof when the trial court revealed it did not recall what the evidence was.

12

preponderance of the evidence if you conclude that it is more likely than not that the fact is true.  [¶]  If the People have not met this burden of proof, you must disregard this evidence entirely.  [¶]  If you decide that the defendant committed the uncharged sexual offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit the sexual offenses charged here.  [¶]  If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of the charged offenses.  [¶]  The People must still prove the charge beyond a reasonable doubt.  [¶]  Do not consider this evidence for any other purpose except for the limited purpose of defendant's credibility."

Defendant argues this instruction "was flawed because it failed to identify the uncharged sexual offense and failed to set out the elements of [that] offense."  We agree. As drafted by the Judicial Council, the first two sentences of this instruction provide: "The People presented evidence that the defendant committed the crime[s] of _____ *<insert description of offense[s]>* that (was/were) not charged in this case. (This/These) crime[s] (is/are) defined for you in these instructions."  (CALCRIM No. 1191.)  The Bench Notes also state:  "The court **must** also instruct the jury on elements of the offense or offenses."  (Judicial Council of Cal., Crim. Jury Instns. (2016) Bench Notes to CALCRIM No. 1191.)  The reason is self-evident.  If the jury is not informed what the uncharged sexual offenses are, and what is required to prove they were committed, the jury is in no position to determine whether or not defendant committed the offenses.

Here, rather than describe the uncharged offenses defendant was claimed to have committed, the instruction given to the jury simply used the phrase "instances of sexual

offenses," leaving the jury to its own devices as to what was required to prove defendant more likely than not committed such "instances." This was error. But it was not, as defendant asserts, error of constitutional dimension. As our colleagues at the Sixth Appellate District explained in *People v. Jandres* (2014) 226 Cal.App.4th 340, rejecting the argument a similarly flawed version of CALCRIM No. 1191 violated that defendant's right to due process by relieving the prosecution of its burden of proof with respect to the charged offenses: "Propensity was, of course, not an element of any of the charged crimes. And the instructions specified that the uncharged offense was not sufficient alone to prove the charged offenses and reminded the jury the People still had the burden to prove each charge beyond a reasonable doubt. Accordingly, 'there is no reasonable likelihood the instruction on uncharged offenses relieved the prosecution of its burden of proof with respect to the charged offenses.' [Citation.]" (*Id*. at p. 359.) That reasoning applies here as well.

Applying the prejudicial error standard applicable to state law error set forth in *People v. Watson* (1956) 46 Cal.2d 818, we must determine whether it is "reasonably probable defendant would have obtained a more favorable outcome" in the absence of the error (*People v. Moye* (2009) 47 Cal.4th 537, 556), i.e., had the version of CALCRIM No. 1191 given to the jury named and defined the uncharged sexual offenses. We conclude there is no such probability.

First, as defendant points out, during the prosecutor's closing argument, she relied on several instances of uncharged conduct to argue defendant was disposed to commit the charged offenses. These instances included the pornographic movie incident, described above, and also included other instances of conduct testified to by the victims and A.D. There can be no real doubt each instance relied upon qualified as a "sexual offense" within the meaning of Evidence Code section 1108. For example, A.D. testified to

incidents of sodomy that were not charged. Sodomy is specifically listed in Evidence Code section 1108, subdivision (d)(1)(A), as a sexual offense. The remaining conduct easily qualified as lewd or lascivious conduct, also specifically listed in subdivision (d)(1)(A), and on which the jury was properly instructed in connection with the charged offenses. Thus, the important question for the jury to resolve with respect to the uncharged conduct in this case was not whether that conduct, if the jury believed it occurred, qualified as the commission of a sexual offense within the meaning of Evidence Code section 1108, but whether the jury believed that uncharged conduct occurred. In other words, this is not a case where a properly instructed jury reasonably might have concluded the uncharged conduct occurred, but also concluded that conduct was not a sexual offense under Evidence Code section 1108, such that it could not be used as disposition evidence under that provision.

Second, the evidence supporting the counts of conviction was strong. Far from being "riddled with inconsistencies," we concur in the jury's implied finding the victims provided credible testimony regarding the counts of conviction. This testimony was largely corroborated by prior statements the 10-year-old victim provided to the police and the 7-year-old victim provided to the SAFE interviewer. The 10-year-old victim's testimony was also corroborated by the fact she revealed the abuse to her childhood friend years before the charges in this case were filed. Even L.E., who testified for the defense, acknowledged her granddaughters had no reason to make up the allegations. And while defendant challenged their credibility, specifically with respect to their delayed and incomplete disclosure of the sexual abuse, the prosecution's CSAAS expert testified dispelling the notion a victim of child sexual abuse would be expected to immediately and fully disclose such abuse.

15

Finally, we are not persuaded by defendant's reliance on the jury's acquittal as to all counts involving A.D. and one of the counts involving the 7-year-old victim. This does not necessarily indicate the jury found the counts of conviction close. All this reveals is the jury took its job seriously, carefully considered the evidence presented at trial, and rendered its verdict as to each separate count.

We conclude there is no reasonable probability of a more favorable outcome had the jury been given a version of CALCRIM No. 1191 that named and defined the uncharged sexual offenses.

### DISPOSITION

The judgment is affirmed.

/s/
HOCH, J.

We concur:


/s/
NICHOLSON, Acting P. J.


/s/
MURRAY, J.

16